We concur with the opinion of TALCOTT, J., in the court below as to the construction of the statute authorizing railroad corporations whenever the track of a railroad shall cross a highway to carry the highway over or under the track "as may be found most expedient," that the election is with the company, and when exercised in good faith is not reviewable. (Laws of 1850, chap. 140, § 24.) The general rule is that when a party is authorized to do one or more acts he has an election, which he will do. (Reg. v. So. E. Railway Co., 6 Eng. L. Eq., 214.) I think this rule applies to this case so far as the mode of crossing is concerned for the reasons stated in the opinion of the court below. If a case should be presented where it was impracticable to restore the highway to any reasonable state of usefulness by a particular mode of crossing, that mode would not perhaps be permitted. The right of the company to cross must be respected, and the rights of the public must not be overlooked or disregarded. The locality in question, I infer from the evidence, was a bad one for a crossing in any mode. The ground descends from some distance south of the railroad to the canal a considerable distance north of it, and any one not an expert can see that objections may be plausibly urged to either of the three ways of crossing, over, under, or at grade. Evidence was permitted to show that by changing the grade of the railroad at that point, a crossing by carrying the highway under the railroad would have been preferable both for the company and the public, but is *Page 305 
does not seem to me clear that the question of the grade of the railroad is a proper element of inquiry upon the question of whether the highway has been restored to usefulness.
The grade of a railroad necessarily embraces considerations of convenience, expense, and facility of construction and operation, and is fixed at a particular point with reference to grades at other points, and it would be exceedingly burdensome if at every highway crossing, the propriety of the grade of the railroad might be inquired into upon the question whether the highway was properly restored. The result might be to make a very uneven and unsuitable railroad. The rights of all are intended by the Legislature to be protected, and I think the Legislature designed that railroad companies should have the privilege of constructing their railroads in their own way, and of crossing highways, over, under, or at grade, and provided for the protection of the public by imposing the duty of restoring highways to their original usefulness as far as practicable. There may be exceptional cases where this rule would not apply, but in general this rule if carried out in good faith will protect railroads in the enjoyment of all the privileges intended to be granted, and at the same time will preserve the rights of the public in the use of their public highways. The duty is imposed by section 28 of the act before referred to, and is in the following words: "The company shall restore the stream or water-course, street, highway, plank-road and turnpike thus intersected or touched, to its former state, or to such a state as not unnecessarily to have impaired its usefulness." The statute implies that the usefulness of a highway intersected may be to some extent impaired and I think it fairly implies also that the crossing must be such, as that the usefulness of the highway shall not be destroyed. The duty thus imposed is an important one for the public, and it should be enforced, not oppressively but reasonably and fairly for the public benefit.
In this case it must be assumed from the general verdict of guilty under the instructions of the court, that it was *Page 306 
based upon the fact that the highway was taken over the railroad by a bridge instead of being taken under or at grade, and that the bridge was per se a nuisance. This was reversed by the General Term and we think rightly. The jury did not pass upon the question whether the approaches to the bridge were properly made, or were kept in proper repair, or whether they were in such a condition as to constitute a public nuisance. It was the duty of the defendant not only to properly make these approaches, but to keep them in suitable repair. Having to this extent interfered with the highway, or rather, having taken possession of the old highway and substituted a new and different one they must preserve it in a state as far as practicable, of original usefulness. (Cott v. Lewiston R.R., 36 N.Y., 214.)
It is charged in the indictment that the approaches are defective in three respects: that the grade is too short and steep, that the embankment is too narrow, and that a portion of it is composed of such unsuitable material that in some seasons of the year the highway is rendered nearly impassable, and evidence was given tending to establish these charges. The weight of the evidence is not for us to consider. That is for the jury.
We think a new trial should have been granted by the General Term to enable the jury to pass upon this phase of the case, and that all questions in respect to it should be brought up on exceptions taken upon such trial. If it clearly appeared for any legal reason that an indictment would not lie, a new trial should not be awarded, but I do not think this can be affirmed. It is said that indictment is not the proper remedy. The remedy by mandamus (58 N.Y., 152), or under chapter 255 of the Laws of 1855, would be doubtless more effectual to secure the desired result, but I do not think there is any legal objection to the remedy of indictment, for a substantial non-compliance with the duty enjoined by statute. It is a general rule that an indictment will lie for not keeping a highway in repair against any one whose duty it is to keep it in repair, and this rule applies as well to *Page 307 
corporations as to individuals. (Bishop on Cr. Law, §§ 502, 503, and cases cited; Reg. v. R.R. Co., 9 Car. P., 469; 2 Redfield on Railways, § 225, and cases cited; Queen v.Sharpe, 3 English Railway Cases, 33, note 1; King v.Yorkshire, 4 B. Ald., 623; 9 Barb., 161.) Here the duty of restoring is enjoined by statute, and as we have seen the duty is continuous. Nor is the remedy by mandamus inconsistent with that by indictment. (10 Wend., 395.) Nor does the civil remedy provided by the statute of 1855 supersede any common law remedy. When the common law gives a remedy, and another is provided by statute, the latter is cumulative unless declared exclusive by the statute. (37 N.Y., 613.)
The judgment of the General Term must be modified by granting a new trial, and as modified affirmed.
All concur, except FOLGER and EARL, JJ., absent.
Judgment accordingly.